Be it pleased the Court, my name is Heather Angove with the Federal Public Defender's Office, and I represent Petitioner-Appellant Socorro Zamudio-Reyes. I would first like to reserve two minutes for rebuttal. This Court should reverse and remand for three reasons based on the District Court errors. First, the District Court erred in not considering whether statutory tolling could apply after equitable tolling, as has been briefed this past week for the Court. Second, the District Court applied an overly burdensome standard of maximum feasible diligence, rather than reasonable diligence, as set forth in Holland and this Court's cases in Sosa v. Diaz and Gibbs. Third, the District Court applied per se rules to the extraordinary circumstances prong and used an impossible-to-file standard, finding that there were certain factors that could never justify equitable tolling and that this Court's ruling in Mendoza v. Kerry actually barred equitable tolling for Mr. Zamudio. Regarding this third factor, under the excerpts of record, pages 2 and 3, and also at 10, you can see that the District Court found Mr. Zamudio relies, heavily relies, on factors that cannot or do not justify equitable tolling, such as lack of awareness of the law and his inability to build a relationship of trust with other inmates. Additionally, the District Court found that a lockdown in itself could not be considered for equitable tolling purposes. And finally, the District Court said that, based on Mendoza, if Mr. Zamudio showed at any time that he had procured the assistance of an inmate translator and helper during the one-year ADEPA limitations period, he would be barred from equitable tolling, and the Court was relying on Mendoza. The District Court was relying on Mendoza. This violates this Court's stop-clock rule, which the Court applied in Gibbs, relying on Socop-Gonzalez v. INS. And the stop-clock rule basically says that once an event tolls the limitations period, we simply stop the clock, and then we wait until a later event permits the statute to run again. Looking at reasonable diligence, this Court has clarified after Holland that reasonable diligence is looking at what the efforts of a reasonable person might be expected to deliver in his or her particular circumstances, as set forth in Gibbs. Diligence is also considered based on the Petitioner's overall level of care and caution based on his or her particular circumstances. But what do we have in the record on diligence? Pardon? What do we have in the record on diligence? We have on the record that Mr. Zamudio, in his allegations in the excerpt of record when he filed his opposition briefs, that he said he took approximately two years, which we know it was actually less, to find an inmate to trust to then help him find a translator. We know that he went to the law library at Soledad and did not find any Spanish-speaking materials. We know that he wrote to the prison law office. We know that he wrote to the Innocence Project, to ICE, to the Mexican Consulate. And we can see now, based on the administrative appeal, in September 2011, he requested his legal documents, his abstract of judgment. Is it fair to say that in September 11th, he had assistance by that time? Yes. And I think we, Mr. Zamudio and the State, agree that as September 11th, he did have And based on that time, he filed an administrative appeal requesting his court documents. And that administrative appeal was not resolved until January 3rd, and he was provided some of his court documents, not all of them. Once he had those, we know he procured or requested his documents in January. Yes. He gets his documents in January. So is it your position that the period from September to January is also equitably told or statutorily told? Equitably told. Equitably told. And that's because they were processing his administrative appeal. Yes. And he had requested the documents specifically to provide to the Innocence Project to file a habeas petition. Why couldn't he get those documents from the court or from someplace else? Why did he have to rely on the prison? Well, we know that, at least in this record, the factual record that we have, that that's where he made the initial request. We know he requested documents from other places because he eventually got the probation report. That was not provided by the prison. And when he filed his ex parte motion in May of 2012 with the superior court to clarify the judgment and the convictions at issue, he cited to the probation report. So we know he did request documents from another source and eventually got the probation report. Then we're asking the court to apply statutory tolling. And statutory tolling can be applied through Section 2244d1b for the State-created impediment, or it can be applied under Section 2244d2 for the time that he pursued his State habeas petitions as well as his ex parte motion. We are arguing that the ex parte motion was a request for a reexamination of his judgment. So he was just asking for some other documents from a related case or from a related case or from a follow-on case or something. What he said, actually, in the ex parte motion is he wanted to know, based on his current case, in he cites the case number, what in the related case, what was the judgment? What was the disposition resolved at the May 14, 2010 sentencing? So we know he was trying to say, in my judgment, what counts of conviction are at issue, so that he could then prepare his State habeas petition and know whether that count, that related count was dismissed or whether it was as part of the judgment along with the underlying case. I've been trying to do a sort of a back-of-the-envelope calculation that I'm not sure either of you has done, at least in your written papers, assuming that he's entitled to statutory tolling at some point once the equitable tolling period is finished. I worked back from the time of the filing of the Federal petition to figure out how far back that statutory period would take him one year, taking out from that period the properly filed State petitions and so on. And I may be off by a day or two because of the sort of the rounding or which days count or don't count, but by my calculation, he needs equitable tolling up until about the 30th of December, 2011. And at that point, he's got to do that. That's when a one-year period of statutory tolling would begin. Is that roughly your calculation? Your Honor, let me tell you what my calculation is, is that if this Court on the existing record applies equitable tolling up until September, 2011. September when? 2011? About September 9th, 2011, when he filed the administrative appeal. And then we continue equitable tolling until January 3rd, 2012, when he received some of his documents. Then we would actually, the statute of limitations would run from January to May. And then our argument is that on May 7th... You've now lost me. Can you answer the question I asked, that is to say, does he get statutory tolling beginning on roughly the end of September, 2011? Statutory tolling, no. He'd have to get equitable tolling. He would get equitable tolling, our argument is, through January, 2012. And the statutory tolling periods would be, if I may finish the question, my answer. Statutory tolling would be between May 17th and June 12th, 2012, and would also be between October 17th, 2012, through April 17th, 2013. And so the tolling or the statute has run for a period of approximately eight and a half months in 2012, because we are also asking for equitable tolling between April and July of 2013. Okay. Do you want to follow up? Okay. You didn't quite answer it, but I get the drift. Thank you. Thank you. May it please the Court, Michelle Swanson for Respondent Morden. So I did that same calculation in my head this morning on the way in on BART, so I'm not super precise here. But what I think I came up with is that the only way Petitioner's petition would be timely is if he got equitable tolling for the entire pendency of his inmate appeal and he had to not only get statutory tolling for his state habeas petitions, but he would also need statutory tolling for the time that he was requesting clarification on that judgment in his other case in the Superior Court. That's the only way his petition would be timely. There is no way he can show that the pendency of his inmate appeal qualified as an inmate appeal in the way of the statute. Why not? I mean, the prison had the materials. Why didn't they just give them to him? Well, first of all, he had to request the materials. There's no constitution. But he did. Why didn't they just give them to him? Well, they did give them to him after a couple of months. He had to go through the appellate process. He had to go through the administrative appeal to get them. Well, but, you know, just because he had to conform to a prison regulation doesn't make it an extraordinary circumstance. It is a, as in Chaffer v. Prosper or Ramirez v. Yates, it's an ordinary prison condition. He goes through the administrative appeal, and they end up giving them to him, don't they? They do give it to him. But, yes. They're there in the prison, correct? They're in his central prison file. That is correct. I don't understand why they just didn't turn them over to him. Well, I think that they were supposed to turn it over to him, and they were in process of turning it over to him. I think his correctional counselor and his case analyst sort of crossed paths and weren't communicating, and then when he appealed, he got what he wanted from his central prison file. But he also has to show not only is it an extraordinary circumstance, which this circuit's case law has said, it's a high burden for a petitioner. So he has to show not just an ordinary circumstance, but that an extraordinary circumstance, but he also has to show that it actually stood in his way and prevented filing. And the fact that he waited over a year and a half to file his Federal petition after receiving his documents from his central prison file shows that those documents had nothing to do with the untimeliness of his filing. No, that doesn't show that at all. It doesn't show what you think it needs to show. You need to show that not having those documents prevented. But that doesn't, if you flip it around, it doesn't mean once he had the documents that they weren't essential for it. Once he has the documents, there may be something else that holds him up. But the fact that he waited after that doesn't tell us that the documents weren't essential. Well, I've also addressed that in my, one of my supplemental briefs. I addressed that. Actually, none of his claims, what he got from his central prison file all related to his sentence. None of his claims relate to his sentence. The information regarding his sentencing, he was there. He knew these facts. He could have related these facts to his inmate translator when he was filling out his form. Here's a hesitation I have. It's a little difficult for us to sort this out here. I understand that we don't, it's all on paper. It's pretty clear that the district court didn't quite understand the applicable rules. That is to say, as I read the district court opinion or order, it wasn't premised on the idea that once you finish your equitable tolling period, you then start your statutory period. That does not appear to have been in the district court's mind. And the district court also had, and he recites in the first of the two the word impossible, which I think is not the way that we now do it. Should we just send this back to the district court after having sort of laid out the way the system is supposed to work and let the district court sort it out? No, Your Honor. First of all, I do disagree about the district court applying the proper standards. This court has held before and after Holland that the impossibility standard doesn't really mean literal impossibility. This court has reaffirmed that as recently as June 2017. But the first mistake of law, I think, is pretty clear, because as part of his order, the district court talks about the May 2012 as if that were to be held against him. Well, that's clearly within the statutory period, and it's irrelevant as to the statutory period, whether he could do it or not. Well, let me just quickly provide some background on procedurally what happened in district court. Petitioner did not make this argument about statutory tolling following equitable tolling in the district court. What he did was he claimed he wanted equitable tolling from the time the statute started running under 2244-D1A through the time he filed his federal petition. I understand that. So that's what we were addressing. I understand that. Okay, and if I may. Can I finish my question? Yes, Your Honor. He was pro se in the district court? Yes, he was. So I would put it on the district court to understand the law. But my only other point is that the district court correctly, under Mendoza, said as soon as he had translation assistance, at that time we believed it was May 2012, because we did not have this inmate appeal showing he had it in September 2011. But as soon as he had it, under Mendoza, equitable tolling stops for that particular extraordinary circumstance. But you didn't understand my point. Okay. If we have an equitable tolling period that lasts for a certain time, let's say, and I don't ask you to concede this, let's say that the equitable tolling lasts until the end of September 2011 or maybe the beginning of October just to make sure there's some overlap. Once you get there, you're within the one-year statutory tolling period. So once you get there, it doesn't matter that he might or might not have had translation help in May of 2012 because it's within the statutory period. It was not within the statutory period. The statutory period ended in July of 2011. He filed his inmate appeal after the statutory period, the statute of limitations expired, if I'm understanding your question correctly. No, you're not understanding my question. The law as it works is if you have equitable tolling after the finality of the State judgment, let's say you get a year of equitable tolling because of some impediment. I'm with you. As soon as the equitable tolling period ends, the statutory period starts. Yes, I agree with that. As I calculate the statutory period working back from the time he files his federal petition, the statutory period would start at the end of September 2011. So he needs equitable tolling up through the end of September 2011. If he has equitable tolling during that period, statutory period then starts. If you're within the statutory period, whether he had translation help or anything else doesn't matter because it's within the statutory period. Therefore, the fact that he might have had translation help in May of 2012 doesn't matter. It doesn't matter now, yes. Well, it doesn't matter. But the district court thought it did matter because it's right there in the district court's order. Based on the facts and arguments that were made to the district court. That's all it can do is consider the facts that were presented to it and the arguments. Because he's pro se, I'm not sure that that's right. We don't typically hold the pro se person to the same standard of making arguments. At some point, the district judge should have it in his or her head what the rules are. Well, there are no standards. It's not that there's no standards for pro se. There are minimal standards for pro se, and he didn't even meet those here. And just quickly, I also wanted to address the fact about remand. Even if the district court, let's assume the district court misapplied the legal standards the review on appeal is de novo. This court is absolutely capable of deciding these questions. Let's assume he's entitled to equitable tolling through September 2011. Let's assume he's entitled to equitable tolling through the end of when he got his documents from his inmate appeal. January 3, 2012. He still does not qualify for timeliness because that first superior court petition where he was merely asking what the judgment was in a different case does not qualify for statutory tolling under 22D2. And if he doesn't get that, by my calculations on BART this morning, he is untimely. He might be untimely by a few days, but if untimely by a few days, doesn't show timeliness. But doesn't he file his first state habeas petition in this case, October 22, 2012? Sometime in October 20... in 2012. That's correct. I don't know the precise date. And then he works his way up the ladder with his state habeas petition. And the intervals between the denial in the superior court, filing the court of appeal, denial in the court of appeal, filing in the superior court, in the Supreme Court, those are permissible intervals. So he gets those periods as well. So when we finally get to the denial by the California Supreme Court, that then runs. So he loses that. That period counts against him between the end of what the state Supreme Court did and the filing in federal court. I get that. But if he's entitled to statutory tolling beginning on October 22, 2012, the statutory period runs back to the end of September 2011. By my calculations this morning, if he received equitable tolling through January 2012, the statute would run for five months. Well, that first superior court petition doesn't toll anything. So the statute's still going. When you say first superior court petition, which one are you talking about? I'm talking about the ex parte motion. I'm sorry, not a petition. It was a motion for clarification about his judgment in the other case. He doesn't get tolling for that. I understand that. We and I are not talking in the same language. Okay, well. I'm starting with the filing on October 22, 2012 of a state habeas petition. Okay. It would, yes. I don't quibble with that. If he filed that within the, it would be a one year he would file that. I don't quibble that he would have continuous statutory tolling from the time he filed his first superior court petition for habeas corpus through the Supreme Court's denial. But my point is, that is not, still not, and he doesn't have enough statutory tolling. His petition is still late by a month, even with that time. Well, I keep saying this, and maybe you understand what I'm saying and maybe you don't or maybe you just disagree. Okay. If we take his first filing that's a permissible filing that allows him for statutory tolling in the state court as October 22, 2012. Okay. And we don't subtract from his statutory tolling the intervals between the superior court, court of appeal and so on. Yes. The only thing that is charged against him beginning on October 22 is the gap between the Supreme Court of the California deciding and the federal filing. That's about 23 days. No. The other gap that he doesn't get is between the conclusion of his intimate appeal and the filing of the superior court petition. He doesn't get that 10 months. Yeah. In your view, the statute begins to run on January 4. Yes. That's my position. Right. And so he doesn't get any tolling for 10 months. Then he files all his stuff. Okay. He gets tolling through April 2013. He has two months left. He filed it three months after that. No. You and I really are not talking the same language. Okay. Okay. I'm sorry, Your Honor. I apologize. It's not your fault. You disagree with me. Unless there are any further questions, I submit it. Thank you, counsel. Your Honor, I do understand the court's point now, now that I have listened. What the court is saying is that if in September 2011 the Supreme Court decided that when his equitable tolling ended and then he had, you know, give or take with a month, October 2011 the statute of limitations would run. He files in October 2012 his state habeas petition so that the tolling would apply for statutory tolling from October 2012 through April 17, 2013. The way I understand that and I support that argument, the way I've calculated it and I've done this many times is that we are only asking for tolling or there are only eight and a half months in 2012 where the statute was running. We argue that he gets equitable tolling not only through the ex parte motion the statute then runs again for approximately four months and one week between June 12, 2012 to October 17 or 18, 2012 when he signed his state habeas petition. Then we apply statutory tolling under 2244 D2 all the time. So we're asking this court to decide that the petition was timely filed based on the existing record or in  alternative to vacate and remand with further factual development of the record for statutory and equitable tolling and also to apply this court's stop clock rule. But your analysis for my purposes I just want to confirm your analysis on whether or not you treat the motion the ex parte motion in Superior Court as statutory tolling. If you don't get that chunk of time from May to June you're entitled to six days between May 17th and June 12th. If you add 26 days to eight and a half months now you get approximately nine and a half even 10 months. 10 months is well within the 12 month adepa limitations period. Do you think that you're entitled to equitably toll time in which the prison was not on lockdown? What we believe is that the circumstances at San Quentin are a lockdown situation in the San Quentin reception center because the CDCR brings up   Quentin reception center. Even though this is not fully developed in the record so remand would be appropriate the San Quentin reception center is essentially a lockdown. That really wasn't my question. My question is if the San Quentin reception center inmates are held in their cells similar to a lockdown. If it's not an official lockdown we believe the conditions still amount to a lockdown. And if the record remains as it is then what you're showing? What you've just argued and I accept it but if we agree that the district court did not abuse its discretion in allowing further factual development and you're stuck with the record you have what showing do you have? We have we show that only the statute only ran for eight and a half months in 2012. And therefore eight and a half months is well within the 12 month limitations period. The petition is timely filed and we go back to the district court to     court has to say. Thank you.
judges: Thomas, W. Fletcher, Paez